## Coleman v. Coleman.

(Decided May 18, 1915.)

Appeal from Campbell Circuit Court.

Divorce—Alimony.—Where it appears that the court properly granted a divorce to the husband the wife has no right to alimony.

BARBOUR & BASSMAN for appellant.

KELLY & REGENSTEIN for appellee.

Opinion of the Court by Judge Nunn—Affirming.

The only question in this case is whether the lower court erred in rejecting appellant's claim for alimony. While this court has no power to reverse a decree of divorce, yet, if on examination of the record, it appears that a divorce has been improperly granted to the husband, and that the wife has not sufficient estate of her own, this court will direct such allowance out of her husband's estate as shall be deemed equitable. In other words, the decree with reference to alimony is subject to review. Mr. Coleman brought the suit alleging abandonment as a cause of divorce. She answered with a claim that he abandoned her, and prayed for a divorce and alimony. This marriage was Mr. Coleman's second venture. His first wife died in 1900, and the present Mrs. Coleman is her sister. He was 55 years old, a chef by occupation, and always lived at Newport, although frequently, and for months at a time, having employ-

ment in other cities. There were two children, daughters, by the first marriage. One of them lives in Newport, and the other in Minneapolis. Mr. Coleman owns a home in Newport worth from $3,000 to $4,000. The Rentz family, into which he married, moved to Minneapolis some time after 1900. His mother-in-law, who is now more than 80 years old, lived with and was cared for by Fannie Rentz, the appellant. The home in which they lived belonged to, or, at least, the legal title was in Fannie Rentz, and is worth not less than $3,000. Fannie, at such times as she could spare from attendance upon her mother, worked as bookkeeper or clerk in the jewelry store of her brothers. For this work they paid her from $10 to $12 per week, but it is explained that this was in a measure a gratuity, or rather an indirect means of aiding their mother and sister. In April, 1911, Coleman went to Minneapolis and married Fannie Rentz, who was then 46 years old. It is claimed for him that he never intended to live there, and his Minneapolis daughter and her husband testified that it was understood between her father and Aunt Fannie beforehand that Mrs. Rentz would make her home with them, that is, this daughter. It is also shown that the northern climate was too severe for Mr. Coleman. He worked in Detroit the winter before and had to leave on that account. During the six weeks he stayed in Minneapolis after the marriage his catarrhal trouble was aggravated. From Minneapolis he went to Dallas, although there is evidence that instead of going to Dallas he desired his wife to go with him to Newport, where he owned a home. The Minneapolis daughter testifies that Mrs. Coleman would not go with him. In other words, she felt that she could not leave her mother. At Dallas he was employed at one of the leading hotels. His salary as chef always averaged about $100 per month, and during the next five months he made two or three remittances to his wife at Minneapolis of from $50 to $75 each. He then wrote from Dallas a request for his wife to come there and live with him, and said he would provide a good home. The record does not show any response to this request. Shortly afterwards, he filed a suit for divorce in the Texas court, and not only alleged a residence there, but the petition charged his wife with cruel and inhuman treatment. An attorney prepared and filed the papers without submitting them to him,

but afterwards, when the alleged grounds for divorce were made known to him, he had his attorney dismiss the action and paid the cost. There were two reasons for this: the first, he did not want to charge his wife with cruelty, and the second, he did not want to claim a residence in Texas. After a while he returned to Kentucky, and filed this suit against his wife, proceeding against her as a non-resident, charging abandonment as a ground for divorce. He alleged that his wife abandoned him in Minnesota, and that abandonment is a ground for divorce under the laws of that State. The wife's answer did not controvert the allegation as to the law of Minnesota, but joined issue on the abandonment. The lower court awarded a divorce to the husband, and dismissed the wife's claim for alimony, but taxed her cost and $100 attorney fee against the husband. Appellant insists that she is entitled to alimony because the lower court wrongfully granted the divorce to her husband, first, because he was not a resident of Kentucky, and next, because he abandoned her.

We think the proof shows beyond question that Newport has always been his residence. His property was there, he always voted there. There is no evidence of any intent to change or abandon Newport as his home, except the fact that he married in Minneapolis and knew that his wife had been caring for her aged mother, his mother-in-law, for years, and that he at once began improving the Minneapolis home. During the six weeks they lived together he spent over $600 on the place. But, as has already been explained, there is evidence that the parties had arranged for Mrs. Rentz to live with her granddaughter. There was an ante-nuptial contract which provided that the survivor should have no dower, homestead or curtesy rights in the other's property. The contract is not in the record, but it is admitted that its terms are not of such character as to preclude the wife's claim to alimony. The appellant introduced Mr. Coleman as a witness to testify about his property, and the fact of the contract serves to corroborate his testimony that he repaired and added to her house in order to make it equal in value with his in Newport. We are not prepared to say that the lower court erred in finding that Newport was his domicile, and that he had never changed it.

14th Cyc., page 613, states a general rule in this manner:

"If the husband establishes a matrimonial domicile and makes a peremptory and unconditional demand upon the wife to live with him there, her refusal to do so, if without justification and persisted in for the statutory time, constitutes desertion."

The separation in this case was not due to any antipathy or aversion either party entertained for the other. Mr. Coleman simply would not live in Minneapolis, and Mrs. Coleman would not leave her mother. Mr. Coleman owned a good home in Newport. There is testimony that he desired her to go there with him. While he did not own a home in Dallas, it is not disputed that his offer to provide one there was in good faith.

It is the duty of the wife to live with her husband and to go wherever he provides a home, and appellant's refusal to do so without justification constitutes desertion. Each has about the same amount of property. It is true, there is proof that Mrs. Rentz furnished the money to provide the home in Minneapolis, but the title is in Mrs. Coleman, and, from the record in this case, it will continue to be hers to do with and dispose of as she pleases.

We confess that the disposition made of this case by the lower court is not altogether satisfactory. But, the circumstances of the case make it impossible to dispose of it satisfactorily, to the parties at least. The judgment of the lower court left the parties, as to property rights, where they were before the marriage. Considering the whole case, we are unable to see what better could have been done with it.

The judgment is, therefore, affirmed.