**William F. THOMAS, Appellant,**

**v.**

**Catherine THOMAS, Appellee.**

Court of Appeals of Kentucky.

Nov. 28, 1958.

Rehearing Denied March 6, 1959.

Laurence E. Higgins, Louisville, for appellant.

William B. Cohen, Louisville, for appellee.

CULLEN, Commissioner.

William F. Thomas, a soldier stationed at Fort Knox, Kentucky, brought action against his wife, Catherine, seeking a divorce on the grounds of abandonment and cruel and inhuman treatment. The circuit court, being of the opinion that the evidence did not sufficiently establish either ground, entered judgment dismissing the complaint. William appeals.

The parties have a seven year old son, but there is no argument about his custody, the husband being willing that the boy remain in the custody of the wife.

After a tour of duty in Germany, during the latter part of which his wife and child were with him, William was assigned to duty at Fort Knox, in January 1955. From that time until the action for divorce was brought in February 1956, Catherine and the child did not live with him, but stayed at the home of her parents in Pennsylvania. Nor did they visit him in Kentucky during that period. The claim of abandonment is based upon this absence of the wife for more than one year.

William testified that on their way back from Germany Catherine announced that she would never again live or stay in an army camp; that he requested her to join him at Fort Knox and she refused to do so. Catherine denied that she had made any such announcement, and testified that William had never arranged for any living

quarters at Fort Knox and had never asked her to join him there. The trial judge, in a written opinion, stated that he was not convinced that William had ever been ready, willing and able to provide, or had offered, a home at or near Fort Knox.

While the evidence does not show that William made any strong effort to secure suitable living quarters for his family at Fort Knox, or repeatedly urged his wife to join him, we cannot escape the conclusion that he felt any efforts along this line would be futile. During the first four years of their married life, from 1946 to 1950, they lived at her parents' home in Pennsylvania, and there is evidence that Catherine refused to move into a separate apartment, or to live in Philadelphia where William had an opportunity for employment. In 1950 William was called to active duty in the armed forces, and assigned to Camp Atterbury in Indiana, and during the 13-month period he was stationed there Catherine did not live with him or even visit him. He was sent to Germany in November 1951, and Catherine eventually joined him there in April 1952. They remained there until December 1954, when they returned to this country, whereupon William was sent to Fort Knox and Catherine went back to live with her parents, having stated, according to William that she would never again live at an army camp. So we find that except for the two-year period in Germany, Catherine selected her parents' home as the place where she would live.

From the testimony of both parties as to the course of their married life, it appears convincingly that Catherine endeavored throughout to "rule the roost." She laid down arbitrary rules as to the time William was to be home for meals, made objections as to his smoking, created scenes when he visited a guest house near their quarters in Germany, wrote demanding letters to his commanding officers, ridiculed his thought of conversion to the Catholic Church, threatened to teach their child to hate him, called him vulgar names,

and accused him of adultery. These things serve to corroborate strongly William's testimony that Catherine refused even to consider living with him at Fort Knox.

It is true that after he came to Fort Knox William visited his wife at her parents' home on three different occasions, and may, as she testified, have had intercourse with her on those occasions, and enjoyed a suitable family relationship. It is also true that he wrote loving letters to her and spoke of his enjoyment of his visits. However, these facts do not establish that he was satisfied with the separation, and willing that she remain in Pennsylvania. On the contrary, they indicate only that he was reconciled to the fact that his only hope of seeing his wife was to go to visit her, and he was still hopeful of salvaging his marriage. The simple fact was that she was insisting that the marriage be conducted solely on her own terms, one of which was that she would not live at an army camp. His efforts to maintain a satisfactory relationship do not overcome the fact that she refused to live with him at the place where his duties required him to be.

It is the wife's duty to go wherever the husband provides a home, and her refusal to do so without justification constitutes abandonment. Morey v. Morey, 218 Ky. 700, 292 S.W. 332; Coleman v. Coleman, 164 Ky. 709, 176 S.W. 186. It is no excuse or justification for the wife here to say that William did not in fact provide a home at Fort Knox, in view of her declaration that she would not live at an army camp. Despite her denial that she made such a declaration, her whole course of conduct is convincing that she did.

It is our opinion that William is entitled to a divorce on the ground of abandonment. Accordingly, the judgment is reversed with directions to enter judgment granting William a divorce with such provisions as to support of the child, and costs, as the court may deem proper.